UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ANGELA C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-02497-TAB-JMS |
| ) | |
| KILOLO KIJAKAZI, Acting Commissioner of the ) | |
| Social Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF COMPLAINT**

**I.     Introduction**

Plaintiff Angela C. seeks judicial review of the Social Security Administration's decision denying her applications for disabled widow's benefits and supplemental security income. Angela C. contends that her disability is supported by a treating psychiatrist's opinion. The Commissioner asks the Court to apply the new regulatory scheme for evaluating medical opinions. For the reasons detailed below, the Court remands the ALJ's decision.

---

[1] According to Federal Rule of Civil Procedure 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named as the Acting Commissioner of the SSA.

**II.     Background**

On September 28, 2017, Plaintiff filed for disabled widow's benefits and supplemental security income, alleging a disability onset date of January 1, 1996.[2] Her applications were denied initially and upon reconsideration. An ALJ conducted a hearing and on November 25, 2019, and denied Plaintiff's claim. The ALJ found that Plaintiff had "the following severe impairments: chronic obstructive pulmonary disease (COPD); atrial fibrillation; cardiomyopathy; degenerative disc disease of the lumbar spine; obesity; bipolar disorder; and social anxiety disorder." [Filing No. 10-2, at ECF p. 19 (citations omitted).] The ALJ found Plaintiff's RFC to be limited as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can stand and/or walk for up to 4 hours in an 8-hour workday. The claimant can never climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs; and occasionally balance, stoop, kneel, crouch, and crawl. The clamant can have only occasional exposure to extreme cold, extreme heat, wetness or humidity. The claimant is limited to occasional exposure to pulmonary irritants, such as fumes, noxious odors, dust, gases, mists, and poorly ventilated areas. The claimant is limited to occasional exposure to hazards, such as moving mechanical parts o[r] unprotected heights. The claimant is able to understand, remember, and carryout work that consists of no more than simple and routine tasks; and work requiring no more than routine judgment defined as being able to make simple work-related decisions. The claimant is limited to simple workplace changes. The claimant requires a work environment free of fast-paced or timed piece rate production work but could meet end of day goals. The claimant can have occasional, brief, and superficial interaction with the public; and only occasional interaction with coworkers; and she cannot perform tandem tasks or teamwork where one production step is dependent on a prior step.

---

[2] Even if Plaintiff were found disabled, she would not be entitled to benefits at the earliest until October 1, 2017, because her claim for disabled widow's benefits has a prescribed period that begins with the date the wage earner died, September 21, 2017, and supplemental security income benefits are not compensable until the application date. In either case, entitlement could not begin until the first full month following an application for supplemental security income or the beginning of the prescribed period for disabled widow's benefits. [*See* Filing No. 10-2, at ECF p. 16-17 (citing 20 C.F.R. § 404.335)]; *see also* 20 C.F.R. § 404.337; 20 C.F.R. § 416.335.

[Filing No. 10-2, at ECF p. 21 (footnote omitted).] Continuing with the five-step determination, the ALJ ultimately found that there were many jobs that Plaintiff could have performed in the national economy, such as a marker, photographic finisher, and mail clerk. Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision.

### III. Discussion

Plaintiff raises three errors, arguing that the ALJ: (1) failed to properly evaluate the medical opinion evidence in determining Plaintiff's RFC, (2) failed to properly evaluate the Plaintiff's subjective statements, and (3) relied on a flawed hypothetical question presented to the vocational expert that did not include Plaintiff's moderate limitations of concentration, persistence, or maintaining pace.

According to the new regulatory scheme for claims such as Plaintiff's (filed on or after March 27, 2017), the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[3] including those from your medical sources." 20 C.F.R. § 404.1520c(a). The SSA continues to use factors to evaluate the "persuasiveness of medical opinions and prior administrative medical findings" but the "most important factors" to be considered are "supportability" and "consistency." *Id.* How those factors were considered must be explained in the determination or decision. *Id*. at 404.1520c(b)(2). "Supportability" considers the relevance of "the objective

---

[3] Administrative medical findings are determinations made by a state agency medical or psychological consultant at the initial or reconsideration level about a claimant's case, "including, but not limited to, the existence and severity of [her] impairment(s), the existence and severity of [her] symptoms, whether [her] impairment(s) meets or medically equals the requirements for any impairment listed in appendix 1 to this subpart, and [her] residual functional capacity." 20 C.F.R. § 404.1513a(a)(1).

3

medical evidence and supporting explanations presented by a medical source." *Id.* at 404.1520c(c)(1). "Consistency" is compared "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 404.1520c(c)(2). Explicit consideration of the remaining factors is permitted, but not always required, except upon a finding that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same . . . ." *Id.* at 404.1520c(b)(2)-(3). The remaining factors are the source's: (1) "[r]elationship with the claimant" including the "[l]ength of the treatment relationship," "[f]requency of examinations," "[p]urpose of the treatment relationship," "[e]xtent of the treatment relationship," and "[e]xamining relationship;" (2) "[s]pecialization;" and (3) "[o]ther factors," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* at 404.1520c(c)(3)-(5).

On May 6, 2019, Plaintiff's treating psychiatrist, Marina Bota, M.D. completed a medical statement questionnaire about Plaintiff's mental functioning. [Filing No. 10-7, at ECF p. 590-93.] The ALJ addressed Dr. Bota's opinion. The ALJ explained:

> The claimant's provider, Dr. Bota, completed an opinion finding that the claimant was extremely impaired in her ability to perform activities within a schedule; interact appropriately with the general public; and sustain an ordinary routine. Dr. Bota noted that the claimant was markedly impaired in her ability to remember work-like procedures; understand short and simple instructions; and make simple work-related decisions. Dr. Bota opined that the claimant would miss more than 4 days a month. Dr. Bota indicated that the claimant's panic attacks resulted in a complete inability to function independently outside the home (Exhibit 20F). The undersigned does not find the opinion of Dr. Bota to be persuasive, as it is not consistent with or supported by the record. The undersigned notes that there is really only one mention of the claimant complaining of panic attacks, which occurred right after her husband's death (Exhibit 5F/10-12). The opinion is also not supported by Dr. Bota's own record showing improvement in the claimant's symptoms with medication or the records of Ms. Whitaker also noting improvement

4

>(Exhibits 1F/8, 15, 10F/2-3, 15F/2-4).  Dr. Bota even recently indicated in February 2019 that the claimant's bipolar disorder was only mildly symptomatic and that her depression had improved (Exhibit 19F/3-4).

[Filing No. 10-2, at ECF p. 27.]  The ALJ provided a limited analysis of the supportability factor. As the ALJ alluded to, Dr. Bota had answered a yes/no question on the form indicating that Plaintiff had a complete inability to function independently outside of her home.  [Filing No. 10-7, at ECF p. 590.]  However, the ALJ did not address the supporting explanation that Dr. Bota gave along with her opinion.  Dr. Bota explained:

>[Plaintiff] presents with symptoms of severe [b]ipolar [disorder], [m]ost recent severe depressive episode and she also presents with anxiety and frequent panic attacks.  She isolates herself, is withdrawn, feels depressed and spends most of her day in bed, feeling fatigued, overwhelmed, having many negative thoughts.  She is forgetful and her thoughts are racing.

[Filing No. 10-7, at ECF p. 593.]  Express consideration of the supportability factor is required. The ALJ did not address Dr. Bota's opinion about Plaintiff's propensity to isolate herself with depression, feel overwhelmed, and to have racing thoughts.

The ALJ's analysis of the consistency factor is also inaccurate and does not address conflicting evidence.  "The ALJ must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *See, e.g.*, *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).  On September 11, 2017, while Plaintiff's husband was still alive but terminally ill with COPD, Plaintiff reported to Dr. Bota that "[s]he feels very anxious," gets "confused often," and has "panic attacks when she goes out of the house and she feels paranoid about people."  [Filing No. 10-7, at ECF p. 93.]  Dr. Bota observed Plaintiff's speech to be "slightly pressured," her thought processes were "somewhat tangential," and she got "off track at times and forgets what she was talking about."  [Filing No. 10-7, at ECF p. 94.]  On October 2, 2017, Plaintiff reported panic attacks after her husband's death and Dr. Bota increased Plaintiff's dosage of Xanax to 2 mg, twice

5

a day because of "increased anxiety," though Dr. Bota explained that she planned to lower the dose in the long run. [Filing No. 10-7, at ECF p. 82-83.] On November 3, 2017, Plaintiff reported to Dr. Bota that "she had a panic attack on her way to the office." [Filing No. 10-7, at ECF p. 122.] Plaintiff reported panic attacks on more than one occasion.

There was also evidence that contradicted that Plaintiff's mental impairments were improving and that her bipolar disorder was only mildly symptomatic. Someone with "bipolar disorder that responds erratically to treatment," and "is under continuous treatment for it with heavy drugs, is likely to have better days and worse days . . . ." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). For example, in *Bauer*, a treating psychiatrist's observations that a claimant's "reported level of function was found to have improved" was not necessarily inconsistent with the psychiatrist's opinion that the claimant was disabled. *Id.* Here, on January 19, 2018, Dr. Bota began transitioning Plaintiff to a different medication for "worsening" depression, Dr. Bota increased Plaintiff's Lamictal dosage because of "mood swings," and she increased her Xanax dosage to 2 mg, three times a day, explaining that this dosage would be lowered when Plaintiff was "more stable." [Filing No. 10-7, at ECF p. 417.] Dr. Bota did not decrease Plaintiff's Xanax dosage. On April 9, 2018, Dr. Bota recorded that Plaintiff's "depression and anxiety have improved. She is stable." [Filing No. 10-7, at ECF p. 470.] However, no changes were made to her medications. On April 27, 2018, Plaintiff reported still having good and bad days. [Filing No. 10-7, at ECF p. 476.] On July 16, 2018, Plaintiff told her therapist that she had worsening anxiety and depression related to "family-relational issues" involving her adult brother and adult son. [Filing No. 10-7, at ECF p. 486.] On October 5, 2018, Plaintiff reported to Dr. Bota "feeling very depressed on some days in the last month" around the anniversary of the death of her husband. [Filing No. 10-7, at ECF p. 569.] On February 22, 2019, Plaintiff reported being "stable for most

6

of the time," and Dr. Bota described her bipolar disorder as "mildly symptomatic at times." [Filing No. 10-7, at ECF p. 566-67.] However, on April 19, 2019, Plaintiff reported to Dr. Bota that she had been depressed, "isolating herself," was not "taking care of herself," she was "avoiding going out as she has been fearful and anxious," she was having problems with concentration and memory, and "she just does not care, she is tired of struggling." [Filing No. 10-7, at ECF p. 564.] Dr. Bota recorded Plaintiff's mood and affect to be anxious and sad, her thought content as "tangential," and Dr. Bota observed that Plaintiff "loses her track of thoughts." [Filing No. 10-7, at ECF p. 564.] Dr. Bota increased Plaintiff's depression dosage and requested case management service be added to Plaintiff's treatment regime because she was "very limited in her ability to get places, to take care of herself, at this time." [Filing No. 10-7, at ECF p. 565.] That was the last treatment visit with Dr. Bota in the record, as well as the last visit before Dr. Bota filled out the opinion questionnaire.

The ALJ found the reviewing psychological consultants' administrative medical findings to be persuasive. [Filing No. 10-2, at ECF p. 26-27.] However, the ALJ did not expressly analyze the supportability factor, and she did not address the consultants' supporting explanations. The most recent consultant to review the record, on September 11, 2018, explained that no more than moderate limitations were supported by the recent treatment notes showing improvement with Plaintiff's mood. [Filing No. 10-3, at ECF p. 69-71.] However, the ALJ did not address the most recent evidence that conflicted with this consultant's explanation.

As a result, further consideration of Dr. Bota's opinion and the administrative medical findings is necessary. On remand, the ALJ should address the required, distinct factors of supportability and consistency, as well as address evidence that conflicts with her conclusions.

7

Given that these issues are dispositive, the Court declines to address Plaintiff's remaining arguments, which in any event are not as well developed.

**IV. Conclusion**

For the reasons explained above, Plaintiff's request for remand is granted. [Filing No. 14.] The ALJ's decision is **REMANDED** for further consideration. Final judgment will issue accordingly.

Date: 12/15/2021

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution: All ECF-registered counsel of record by email.